IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE BALAM VALENCIA,<br>a/k/a Jose Luis Valencia,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:22-cv-00238-RJS-DBP<br><br>Chief District Judge Robert J. Shelby<br><br>Chief Magistrate Judge Dustin B. Pead |

Plaintiff United States of America brought this action seeking revocation of Defendant Jose Valencia's naturalized U.S. citizenship under 8 U.S.C. § 1451(a).[1] Now before the court is the United States' Motion for Summary Judgment.[2] Valencia has not filed an opposition. For the reasons set forth below, the United States' Motion is GRANTED.

### BACKGROUND

Because the court is reviewing a motion for summary judgment that is unopposed, the court accepts as true all material facts that are asserted and properly supported in the Motion.[3] The following facts are drawn from the Motion and attached declarations and exhibits. They are admitted to the record for summary judgment purposes.

Valencia was born in Santa Ana, El Salvador in 1963.[4] He first entered the United States without inspection sometime between 1985 and 1987.[5] On April 13, 2000, Valencia applied for

---

[1] Dkt. 2, *Complaint* at 2.

[2] Dkt. 8 (SEALED); Dkt. 6, *Redacted Motion for Summary Judgment*.

[3] *See Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002).

[4] Dkt. 6 at 4; *see also* Dkt. 6-1, *Birth Certificate of J.B. Valencia* at 3.

[5] Dkt. 6 at 4; *see also* Dkt. 6-2, *Alien Address Report Card* at 3; Dkt. 6-3, *Immigration and Naturalization Service (INS) Form I-881* at 4; Dkt. 6-4, *INS Form I-765* at 3.

1

permanent resident status.[6] U.S. Citizenship and Immigration Services (USCIS) approved Valencia's application on June 10, 2003 and adjusted his immigration status to permanent resident.[7]

On March 12, 2009, Valencia filed with USCIS a Form N-400, Application for Naturalization, seeking U.S. citizenship based on his status as a permanent resident for at least five years.[8] In filling out his Application, Valencia signed the Form under penalty of perjury, certifying his answers were true and correct.[9] On Question 15 of the Application, "Have you **ever** committed a crime or offense for which you were **not** arrested?" Valencia marked "No."[10] Valencia reaffirmed this answer in his interview with a USCIS Officer on June 8, 2009.[11] Both at the beginning and end of his interview with the Officer, Valencia took an oath affirming he would and did answer all questions truthfully.[12] Following his interview, Valencia again signed his Application averring that "the evidence submitted . . . [was] true and correct to the best of [his] knowledge and belief."[13] On June 8, 2009, USCIS approved Valencia's Application.[14] And on August 20, 2009, Valencia took an Oath of Allegiance to the United States, was admitted as a U.S. citizen, and was issued Certificate of Naturalization No. 31967935.[15]

---

[6] Dkt. 6 at 4; *see also* Dkt. 6-3.

[7] Dkt. 6 at 6; *see also* Dkt. 6-3 at 3.

[8] Dkt. 6 at 6; *see also* Dkt. 6-6, *USCIS Form N-400*.

[9] Dkt. 6 at 8; *see also* Dkt. 6-6 at 12.

[10] Dkt. 6 at 7; *see also* Dkt. 6-6 at 10 (emphasis in original).

[11] Dkt. 6 at 8–9; *see also* Dkt. 6-6 at 10, 12; Dkt. 6-8 ¶¶ 4, 6.

[12] Dkt. 6 at 8; *see also* Dkt. 6-6 at 12; Dkt. 6-8 ¶¶ 5, 7–8.

[13] Dkt. 6 at 10; *see also* Dkt. 6-6 at 12; Dkt. 6-8 ¶ 8.

[14] Dkt. 6 at 10; *see also* Dkt. 6-6 at 3.

[15] Dkt. 6 at 10; *see also* Dkt. 6-9, *Certificate of Naturalization No. 31967935* at 3.

Years later, in 2014, Valencia's daughter, R.V., reported to police that Valencia had sexually abused her beginning in 2004 and ending when she fled his home in December 2013.[16] Valencia's abuse of R.V. began in 2004 when he lived in the United States and R.V. lived in El Salvador.[17] R.V. was still a minor when Valencia first sexually assaulted her during a 2004 visit to El Salvador.[18] Thereafter, Valencia began providing R.V. with monthly financial support, which she depended on for necessities and schooling.[19] He threatened to stop providing financial support if R.V. refused to have a sexual relationship with him.[20] Between 2004 and 2006, Valencia continued to visit R.V. in El Salvador and had nonconsensual sex with her during each of his visits.[21]

In 2006, Valencia paid and coordinated with a human trafficker to bring R.V. to the United States from El Salvador.[22] The day R.V. arrived in the United States, in February 2006, Valencia raped her.[23] He told R.V. that she would have to provide him with sex as repayment for bringing her into the country.[24] Over the next six years, while R.V. was living in Valencia's home, he frequently raped her and forced her to perform oral sex on him.[25] R.V. could not recall the exact number of occurrences but stated that Valencia sexually assaulted her at least once a

---

[16] Dkt. 6 at 11; *see also* Dkt. 6-13, *Birth Certificate of R.V.* at 3; Dkt. 6-6 at 8 (listing R.V. as one of Valencia's children); Dkt. 6-11, *Certified Police Report 14i013306 – Supplemental Narrative* at 9; Dkt. 6-12, *Plea Agreement in State v. Valencia, Case No. 161901783 (Utah Dist. Ct. Jan 23, 2017)* at 3–4.

[17] Dkt. 6 at 11; *see also* Dkt. 6-11 at 14–15; Dkt. 6-14, *Certified Hearing Transcript in State v. Valencia, Case No. 161901783 (Utah Dist. Ct. Jan 23, 2017)* at 6.

[18] Dkt. 6 at 11; *see also* Dkt. 6-14 at 6.

[19] Dkt. 6 at 12; *see also* Dkt. 6-11 at 14–15; Dkt. 6-14 at 6.

[20] Dkt. 6 at 12; *see also* Dkt. 6-11 at 14–15; Dkt. 6-14 at 6.

[21] Dkt. 6 at 12; *see also* Dkt. 6-11 at 14–15; Dkt. 6-14 at 6.

[22] Dkt. 6 at 12; *see also* Dkt. 6-11 at 14–15; Dkt. 6-14 at 6–7.

[23] Dkt. 6 at 13; *see also* Dkt. 6-11 at 15–16; Dkt. 6-14 at 9.

[24] Dkt. 6 at 13; *see also* Dkt. 6-11 at 15–16; Dkt. 6-14 at 7.

[25] Dkt. 6 at 13; *see also* Dkt. 6-11 at 23; Dkt. 6-14 at 9–10.

year from 2006 through 2013.[26]  On December 10, 2010, R.V. gave birth to a child fathered by Valencia.[27]

With the assistance of a co-worker, R.V. fled Valencia's home in 2013 and reported him to the police.[28]  On March 4, 2016, authorities arrested Valencia in Texas and extradited him to Utah for prosecution related to the crimes against R.V.[29]  Utah state prosecutors eventually filed a six-count information against Valencia, charging him with multiple counts of rape and forcible sodomy.[30]  On January 23, 2017, Valencia pleaded guilty to attempted rape and attempted forcible sodomy.[31]  Despite pleading guilty to two inchoate crimes, in his plea agreement and at his plea hearing, Valencia admitted to actually raping and forcibly sodomizing R.V. on or about February 1, 2006 and December 31, 2013.[32]  On March 20, 2017, the Utah State Court sentenced Valencia to a term of confinement of not less than one year and not more than fifteen years for each offense, to run consecutively.[33]

## PROCEDURAL HISTORY

Based on the foregoing criminal proceedings, the United States filed this action on April 6, 2022, seeking revocation of Valencia's naturalized U.S. citizenship and other related declaratory and injunctive relief.[34]  The United States brings six counts asserting Valencia

---

[26] Dkt. 6 at 13; *see also* Dkt. 6–14 at 9–10.

[27] Dkt. 6 at 14; *see also* Dkt. 6-16, *Birth Certificate of Y.V.* at 2.

[28] Dkt. 6 at 14; *see also* Dkt. 6-11 at 9, 16–17; Dkt 6-14 at 10–11, 16.

[29] Dkt. 6 at 14; *see also* Dkt. 6-11 at 69; Dkt. 6-17, *Utah Extradition Warrant #1-4477*.

[30] Dkt. 6 at 14–15; *see also* Dkt. 6-18, *Third Amended Information in State v. Valencia, Case No. 161901783 (Utah Dist. Ct. July 20, 2016)*.

[31] Dkt. 6 at 15; *see also* Dkt. 6-12 at 2–4.

[32] Dkt. 6 at 15–16; *see also* Dkt. 6-14 at 21–24.

[33] Dkt. 6 at 16; *see also* Dkt. 6-14 at 26; Dkt. 6-19, *Order in State v. Valencia, Case No. 161901783 (Utah Dist. Ct. Jan. 23, 2017)* at 3.

[34] *See* Dkt. 2 at 29–30 (prayer for relief).

illegally procured his naturalization—I: conviction of crimes involving moral turpitude, II: commission of unlawful acts adverse to good moral character, III: providing false testimony to obtain an immigration benefit, IV: conviction of multiple offenses with an aggregate sentence of more than five years, and V and VI: lacking the requisite lawful admission for permanent residence[35]—and one count asserting Valencia procured his naturalization by concealment of a material fact or by willful misrepresentation—VII.[36]  On April 15, 2022, the United States filed a certificate of service indicating Valencia was served with the summons and Complaint in this matter on April 13, 2022.[37]

On August 22, 2022, the United States moved for summary judgment on all counts, arguing "[t]he undisputed material facts establish that [Valencia] engaged in criminal activity that statutorily disqualified him from U.S. citizenship and that he misrepresented and concealed his criminal activity throughout the naturalization process[.]"[38]  Valencia has not made an appearance and the United States' Motion remains unopposed.

For the reasons set forth below, the United States' Motion is GRANTED.

## LEGAL STANDARDS

Generally, summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law."[39]  Thus, the threshold inquiry is whether "there are any genuine factual issues that properly can be resolved

---

[35] Count V alleges Valencia was "precluded from lawfully adjusting his status to that of a lawful permanent resident" because he "had provided false testimony on his INS Form I-881," whereas Count VI alleges he "was not lawfully admitted to the United States in August 2006 because he was seeking admission while inadmissible because of his sexual abuse of his daughter." See Dkt. 6 at 19–20 (summarizing counts).

[36] See Dkt. 6 at 19–20 (summarizing counts from Complaint); see also Dkt. 2 ¶¶ 88–162.

[37] Dkt. 4, *Certificate of Service*.

[38] Dkt. 6 at 2.

[39] Fed. R. Civ. P. 56(a).

only by a finder of fact because they may reasonably be resolved in favor of either party."[40]  In ruling on a motion for summary judgment, the court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party."[41]

In considering an unopposed motion for summary judgment, the court must "examin[e] the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law."[42]  Where the movant has not submitted sufficient evidence to meet this burden, "summary judgment must be denied even if no opposing evidentiary matter is presented."[43]  The court will not grant summary judgment simply because it is unopposed.[44]  However, by failing to respond, the nonmovant "waives the right to respond or to controvert the facts asserted in the summary judgment motion."[45]  The court will "accept as true all material facts asserted and properly supported in the summary judgment motion[]" and will grant summary judgment "if those facts entitle the moving party to judgment as a matter of law[.]"[46]

## ANALYSIS

In its Motion for Summary Judgment, the United States asks the court to conclude as a matter of law that Valencia's naturalization may be revoked.[47]  Under 8 U.S.C. § 1451(a), naturalization may be revoked and set aside if it was: (1) "illegally procured," or (2) "procured

---

[40] *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

[41] *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

[42] *Reed*, 312 F.3d at 1195.

[43] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

[44] *See Reed*, 312 F.3d at 1194–95.

[45] *Id.* at 1195.

[46] *Id.*

[47] *See* Dkt. 6 at 19–20 (summarizing counts from Complaint); *see also* Dkt. 2 ¶¶ 88–162.

by concealment of a material fact or by willful misrepresentation."[48] Naturalization is illegally procured when the individual failed to comply with any of the prerequisites for naturalization specified by Congress.[49] Among other requirements set forth by Congress, an applicant for naturalized U.S. citizenship must show he "has been and still is a person of good moral character" for the five-year statutory period preceding the filing of a naturalization application and continuing through the date admitting him to citizenship.[50]

Because of the importance of the right at stake, the United States "carries a heavy burden of proof in a proceeding to divest a naturalized citizen of his citizenship."[51] "The evidence justifying revocation of citizenship must be 'clear, unequivocal, and convincing' and not leave 'the issue in doubt.'"[52] But, once the court has determined a person obtained naturalization illegally or through concealment of a material fact, the court has no discretion to refrain from entering a judgment of denaturalization.[53]

The United States argues Valencia's naturalization must be revoked under both grounds available under §1451(a). First, it argues pursuant to Counts I-VI in its Complaint that Valencia illegally procured his favorable status. Second, in line with Count VII, it argues Valencia procured his naturalization by concealing a material fact or engaging in willful misrepresentation. While the United States moves for summary judgment on each of the bases

---

[48] 8 U.S.C. § 1451(a).

[49] *Fedorenko v. United States*, 449 U.S. 490, 505 (1981) (quoting 8. U.S.C. § 1451(a)) .

[50] 8 U.S.C. § 1427(a); *see also* 8 C.F.R. §§ 316.2(a)(7), 316.10(a)(1).

[51] *Fedorenko,* 449 U.S. at 505 (internal citation omitted).

[52] *Id.* (quoting *Schneiderman v. United States*, 320 U.S. 118, 125 (1943)) (other internal citations omitted).

[53] *Fedorenko*, 449 U.S. at 517; *see also id.* ("Once it has been determined that a person does not qualify for citizenship, the district court has no discretion to ignore the defect and grant citizenship. By the same token, once a district court determines that the Government has met its burden of proving that a naturalized citizen obtained his citizenship illegally or by willful misrepresentation, it has no discretion to excuse the conduct. . . . In case after case, we have rejected lower court efforts to moderate or otherwise avoid the statutory mandate of Congress in denaturalization proceedings.") (internal quotation marks and citations omitted).

alleged in the seven Counts in the Complaint, it need only prove one count by clear and convincing evidence to warrant a judgment revoking Valencia's naturalization.[54] For that reason, the court analyzes only the Counts related to Valencia's convictions and concludes that clear and convincing evidence demonstrates Valencia illegally procured his naturalization because he failed to show good moral character during the relevant statutory period.[55] Accordingly, the United States' Motion is GRANTED.

### I. Valencia Was Convicted of Crimes Involving Moral Turpitude During the Statutory Period (Count I)

An applicant statutorily lacks good moral character and is therefore ineligible for naturalization if he is convicted of, or admits having committed, "a crime involving moral turpitude . . . or an attempt or conspiracy to commit such a crime[.]"[56] "Whether a conviction constitutes a crime involving moral turpitude is a question of law" for the court to decide.[57] In determining whether crimes are morally turpitudinous, courts look to the specific language of the criminal statute rather than "the underlying factual circumstances of the crime," following the "categorical approach" set forth by the Supreme Court.[58] If every possible conviction under the statute requires moral turpitude, then the conviction it is deemed a "categorical" crime involving moral turpitude.[59] If, by contrast, the statute encompasses and criminalizes conduct that may not

---

[54] *See* Dkt. 6 at 19–20 (citing *United States v. Nunez-Garcia*, 262 F. Supp. 2d 1073, 1088 (C.D. Cal. 2003) and *United States v. Becker*, No. 18-cv-2049, 2021 WL 4498649, at *17 (C.D. Cal. Apr. 12, 2021)); *see also United States v. Muthara*, 737 F. App'x 426, 427 (10th Cir. 2018).

[55] *See* Dkt. 6 at 19–20; *see also* Dkt. 2 ¶¶ 88–122.

[56] 8 U.S.C. § 1101(f)(3) (cross-referencing 8 U.S.C. §1182(a)(2)(A)); *see also* 8 C.F.R. § 316.10(b)(2)(i).

[57] *Rodriguez-Heredia v. Holder*, 639 F.3d 1264, 1267 (10th Cir. 2011).

[58] *Id.* at 1267.

[59] *Ibarra v. Holder*, 736 F.3d 903, 907 (10th Cir. 2013).

be morally turpitudinous, courts will sometimes apply a "modified categorical approach" to reach the specific nature of the convicted offense.[60]

The United States Court of Appeals for the Tenth Circuit has consistently defined moral turpitude as "conduct which is inherently base, vile or depraved, contrary to the accepted rules of morality and duties owed between man and man, either one's fellow man or society in general."[61] Specifically, moral turpitude "reaches conduct that is inherently wrong, or *malum in se*,"[62] such as the paradigmatic examples of murder and theft.

The evidence clearly, unequivocally, and convincingly shows that Valencia both admitted under oath and pleaded guilty to the attempted rape and attempted forcible sodomy of his daughter in violation of Utah Code sections 76–5–402 and 76–5–403, respectively.[63] While there is little Tenth Circuit case law on the moral turpitude of rape and forcible sodomy, it is well established that such nonconsensual sex crimes are crimes involving moral turpitude.[64] Moreover, Valencia admitted before the court under oath to actually raping and forcibly sodomizing his daughter.[65] While the Tenth Circuit has pointed out the phrase "crime involving

---

[60] *See Flores-Molina v. Sessions*, 850 F.3d 1150, 1158 n.3 (10th Cir. 2017).

[61] *Wittgenstein v. INS*, 124 F.3d 1244, 1246 (10th Cir. 1997) (quotations omitted); *see also, e.g.*, *Efagene v. Holder*, 642 F.3d 918, 921 (10th Cir. 2011); *Perez v. Lynch*, 630 F. App'x 870, 872 (10th Cir. 2015).

[62] *Efagene*, 642 F.3d at 921 (emphasis in original).

[63] *See* Dkt. 6 at 15; Dkt. 6-12 at 2–4; Dkt. 6-14 at 21–22.

[64] *See In re Torres-Varela*, 23 I. & N. Dec. 78, 84 (BIA 2001) (stating that "crimes involving acts of baseness or depravity," such as "murder, rape, robbery, kidnaping, . . . child abuse, and incest," have been found to be crimes involving moral turpitude); *see also, e.g.*, *Bakor v. Barr*, 958 F.3d 732, 736 (8th Cir. 2020) ("The Board [of Immigration Appeals] has long considered nonconsensual sexual contact to be the type of conduct that qualifies as turpitudinous[.]"); *United States v. Gkanios*, 536 F. App'x 854, 857 (11th Cir. 2013) ("Gkanios pleaded guilty to, and has been found guilty by a jury of, raping and sodomizing his underage step-daughter during the statutory period. . . . Gkanios does not, and cannot, contest that these were unlawful acts that reflect poorly on his moral character." (citing *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002) ("The sexual abuse of a child is . . . an act repugnant to the moral instincts of a decent people."))).

[65] *See* Dkt. 6 at 15; Dkt. 6-14 at 21–22.

9

moral turpitude" is "perhaps the quintessential example of an ambiguous phrase,"[66] Valencia's convictions for attempted rape and attempted forcible sodomy do not present a close case. These acts were deeply "base, vile or depraved"[67] and soundly qualify as morally turpitudinous.

## II. Valencia Committed Unlawful Acts That Adversely Reflected on His Moral Character and He Was Convicted and Imprisoned for Such Acts (Count II)

An applicant is further unable to show he has the good moral character necessary to become a naturalized U.S. citizen if, in the absence of "extenuating circumstances," he "[c]ommitted unlawful acts that adversely reflect upon [his] moral character, or [he] was convicted or imprisoned for such acts."[68] In determining whether Valencia's unlawful acts adversely reflect upon his moral character, the court must "engage in a fact-specific analysis and, as a guide, . . . consider[] whether [Valencia's] conduct goes against the standards of an average citizen of the community."[69] Without restating the record's undisputed facts, the court concludes that Valencia's egregious behavior clears this threshold. Not only do Valencia's unlawful acts adversely reflect upon his moral character, but he was also convicted and imprisoned for the attempted rape and attempted forcible sodomy of his daughter.[70] Moreover, the record does not reveal any extenuating circumstances that "render the crime less reprehensible . . . or tend to palliate or lessen its guilt."[71] On the contrary, the uncontested facts before the court—implicating

---

[66] *De Leon v. Lynch*, 808 F.3d 1224, 1228 (10th Cir. 2015) (internal quotation marks and citations omitted).

[67] *Wittgenstein*, 124 F.3d at 1246 (quotations omitted).

[68] 8 C.F.R. § 316.10(b)(3)(iii); *see also United States v. Hsu*, 695 F. App'x 393, 396 (10th Cir. 2017).

[69] *United States v. Hsu*, No. 2:14 CV 77, 2015 U.S. Dist. LEXIS 180365, at *9 (D. Utah July 21, 2015) (citing 8 C.F.R. § 316.10(a)(2)).

[70] Dkt. 6 at 16; *see also* Dkt. 6-14 at 26; Dkt. 6-19 at 3.

[71] *Hsu*, 2015 U.S. Dist. LEXIS 180365, at *14 (citing *United States v. Suarez*, 664 F.3d 655, 662 (7th Cir. 2011)).

incest,[72] coercion,[73] and years-long physical and emotional abuse[74]—overwhelmingly serve to aggravate, rather than palliate, the adverse reflection on Valencia's moral character.

### III.  Valencia Was Convicted of Multiple Offenses (Count IV)

An applicant can still be statutorily barred from the privilege of naturalized U.S. citizenship if he is "convicted of 2 or more offenses . . . regardless of whether the offenses involved moral turpitude, for which the aggregate sentences to confinement were 5 years or more."[75]  In evaluating a sentence term for this naturalization bar, an indeterminate sentence is measured "by the possible maximum term of imprisonment."[76]  As noted above, Valencia pleaded guilty and was convicted of attempted rape and attempted forcible sodomy, crimes for which he was sentenced to two consecutive terms of one to fifteen years.[77]  Valencia's aggregate sentence adds up to thirty years, far exceeding the statutory minimum of five years or more needed to render him inadmissible for lack of good moral character.[78]

### IV.  Valencia's Unlawful Acts Render His Naturalization Illegally Procured

Based on the filing date of Valencia's N-400 Application, he was required to demonstrate that he was a person of good moral character from March 12, 2004 until August 20, 2009.[79]  During this time, the record establishes Valencia raped and forcibly sodomized his daughter.[80]  The clear, unequivocal, and convincing evidence presented by the United States leaves the court

---

[72] Dkt. 6 at 13; *see also* Dkt. 6–14 at 9–10.

[73] Dkt. 6 at 12; *see also* Dkt. 6-11 at 14–15, 23; Dkt. 6-14 at 6, 9–10.

[74] *Id.*

[75] 8 U.S.C. § 1101(f)(3) (cross-referencing 8 U.S.C. § 1182(a)(2)(B)); *see also* 8 C.F.R. § 316.10(b)(2)(ii).

[76] *Nguyen v. I.N.S.*, 53 F.3d 310, 311 (10th Cir. 1995).

[77] *See* Dkt. 6-16 at 26; Dkt. 6-19 at 3.

[78] *See* 8 U.S.C. § 1182(a)(2)(B); *see also* 8 C.F.R. § 316.10(b)(2)(ii).

[79] *See* Dkt. 6-9 at 3 (listing date of admission to citizenship as August 20, 2009); *see also* 8 U.S.C. § 1427(a)(3).

[80] *See generally* Dkt. 6-11; Dkt. 6-12; Dkt. 6-14.

with no doubt that Valencia committed these acts during the statutory period, pleaded guilty and admitted to these acts, and was sentenced to two consecutive periods of one to fifteen years.[81] It is inconsequential that Valencia was convicted after his naturalization since the criminal conduct took place during the statutory period.[82] Nor does it matter that the plea was for two inchoate crimes, as a guilty plea for attempted rape and forcible sodomy is sufficient to render Valencia ineligible for naturalization on grounds of moral unfitness.[83]

The United States has produced clear, unequivocal, and convincing evidence establishing the fact of Valencia's criminal conviction, sentence, and the underlying criminal acts. By failing to appear or respond, Valencia has waived his right to controvert the facts asserted and properly supported by the United States.[84] The United States has met its heavy burden of proof and has demonstrated no material fact remains in dispute and it is therefore entitled to judgment as a matter of law.[85]

For these reasons, the court agrees with the United States and is left with no doubt that Valencia "illegally procured naturalization because he lacked the requisite good moral character to naturalize." Valencia "was prohibited from establishing good moral character" for "having been convicted of crimes involving moral turpitude" (Count I) and "having committed unlawful

---

[81] *See generally* Dkt. 6-11; Dkt. 6-12, Dkt. 6-14; Dkt. 6-19.

[82] *See United States v. Suarez*, 664 F.3d 655, 661 (7th Cir. 2011) ("[A] conviction during the statutory period is not necessary for a finding that an applicant lacks good moral character. It is enough that the offense was committed during that time."); *United States v. Zhou*, 815 F.3d 639, 644 (9th Cir. 2016) (finding that unlawful acts during the statutory period would be considered even when the conviction came after naturalization); *United States v. Dang*, 488 F.3d 1135, 1140–41 (9th Cir. 2007) (same); *United States v. Jean-Baptiste*, 395 F.3d 1190, 1193 (11th Cir. 2005) (same).

[83] *See* 8 U.S.C. § 1182(a)2)(A)(i)(I) ("any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude *or an attempt or conspiracy to commit such a crime* . . . is inadmissible.") (emphasis added).

[84] *See Reed*, 312 F.3d at 1195.

[85] *Id.*

acts . . . which adversely reflected upon his moral character" (Count II).  Additionally, Valencia is barred from naturalization for "having been convicted of multiple offenses for which he received an aggregate sentence of more than five years" (Count IV).[86]  Thus, the court GRANTS Summary Judgment on Counts I, II, and IV of the Complaint.  Because any one of the Counts brought by the United States is independently sufficient to establish the illegitimacy of Valencia's naturalization, the court does not opine as to the remaining four Counts.

## CONCLUSION

Based on the forgoing, the United States' Motion for Summary Judgment[87] is GRANTED.

Accordingly, IT IS HEREBY ORDERED that Valencia's naturalization ordered by the Attorney General of the United States, admitting him to U.S. citizenship, is revoked and set aside.  Certificate of Naturalization No. 31967935 is hereby canceled, effective as of the original date of the order and certificate—August 20, 2009.  Valencia is forever restrained and enjoined from claiming any rights, privileges, or advantages under any document which evidences U.S. citizenship obtained as a result of his August 20, 2009 naturalization.

IT IS FURTHER ORDERED that Valencia surrender and deliver, within ten days of the entry of this Order, his Certificate of Naturalization No. 31967935 and any copies thereof in his possession—and to make good faith efforts to recover and immediately surrender any copies thereof that he knows are in the possession of others—to the Attorney General, or his designated representative.

---

[86] *See* Dkt. 6 at 19–20; *see also* Dkt. 2 ¶¶ 88–112, 123–132.
[87] Dkt. 8.

IT IS ALSO ORDERED that Valencia surrender and deliver, within ten days of the entry of this Order, any other indicia of U.S. citizenship (including, but not limited to, U.S. passports, voter registration cards, and other relevant documents, whether current or expired), and any copies thereof in his possession—and to make good faith efforts to recover and then surrender any copies thereof that he knows are in the possession of others—to the Attorney General, or to his designated representative.

SO ORDERED this 22nd day of December, 2022.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge